UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BMO HARRIS BANK N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TRANS LINER CORP, ) | Case No. 2:21CV9-PPS/JEM |
| TRANS LEASE TRUCKS AND TRAILERS LLC, ) | |
| MIRJANA KUZMANOVA, and ) | |
| VLADIMIR KUZMANOVSKI, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before me on Plaintiff BMO Harris Bank's Motion for Default Judgment against defendants Trans Liner Corp., Trans Lease Trucks and Trailers LLC, Mirjana Kuzmanova and Vladimir Kuzmanovski, based on defaults under ten Loan and Security Agreements with BMO Harris. As set forth in detail in the findings below, Trans Lease and Trans Liner were the Borrowers under the agreements. Kuzmanova, Kuzmanovski and Trans Liner were Guarantors. The Court has personal jurisdiction over defendants and subject matter jurisdiction over this action. The motion for default judgment was served on the defendants by mail, and no defendant has made an appearance or opposed the motion.

### Findings of Fact and Conclusions of Law

Having considered the Verified Complaint, the Motion and memoranda, declarations, and exhibits attached to the foregoing, and the documents filed of record in this action, I make the following findings of fact and conclusions of law.

1. On January 8, 2021, Plaintiff filed the Complaint in this action and duly served the Defendants with a copy of the Complaint and Summons.

2. As set forth in the Complaint, Plaintiff and Borrowers entered into the following agreements (the "Agreements"):

   a. Loan and Security Agreement dated May 11, 2017 executed by Plaintiff, as lender, and Trans Liner, as borrower;

   b. Loan and Security Agreement dated March 20, 2018 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   c. Loan and Security Agreement dated April 11, 2018 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   d. Loan and Security Agreement dated April 26, 2018 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   e. Loan and Security Agreement dated May 16, 2018 executed by Plaintiff, as lender, and Trans Liner, as borrower;

   f. Loan and Security Agreement dated March 28, 2019 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   g. Loan and Security Agreement dated May 1, 2019 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   h. Loan and Security Agreement dated May 22, 2019 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   i. Loan and Security Agreement dated June 5, 2019 executed by Plaintiff, as lender, and Trans Lease, as borrower;

   j. Loan and Security Agreement dated June 26, 2019 executed by Plaintiff, as lender, and Trans Lease, as borrower;

3. As set forth in the Complaint, Kuzmanova and Kuzmanovski guaranteed the Borrowers' performance under the Agreements and Trans Liner guaranteed the performance of Trans Lease under its agreements with Plaintiff (collectively, the "Guaranties").

4. Plaintiff possesses a first-priority security interest in the equipment described in the Agreements, including all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto (the "Collateral").

5. Defendants are in default under the Agreements and the Guaranties for, among other things, failure to make payments thereunder when such payments became due. Plaintiff has proved the amounts due and owing under the Agreements as of December 9, 2020, as well as the continuing accrual of amounts owed *per diem* thereafter.

6. Prior to the filing the Motion, Plaintiff recovered certain units of the Collateral, but Borrowers have possession or control of the following units of Collateral and have failed or refused to surrender the same to Plaintiff (hereinafter, the "Retained Collateral"):

| **Borrower** | **Year** | **Make** | **Model** | **VIN** |
|---|---|---|---|---|
| Trans Liner | 2013 | Freightliner | Cascadia Series | 1FUJGLBG0DSBS6635 |
| | 2013 | Freightliner | Cascadia Series | 3AKJGLBG3DSBS6949 |
| Trans Lease | 2014 | Freightliner | Cascadia Series | 3AKJGLBG5ESFJ1284 |
| Trans Lease | 2015 | MAC | Steel Flatbeds | 5MAPA4840FA030623 |
| Trans Lease | 2015 | MAC | 48' Flatbed | 5MAPA4845FA030620 |
| Trans Liner | 2018 | Ford | F250 | 1FT7W2BT3JEB80322 |
| Trans Lease | 2016 | Kenworth | T680 Series | 1XKYD49X4GJ487615 |
| | 2016 | Kenworth | T680 Series | 1XKYD49X8GJ487617 |
| Trans Lease | 2009 | MAC | Steel Flatbeds | 5MAPA48269A018107 |
| Trans Lease | 2009 | MAC | Steel Flatbeds | 5MAPA48239A017786 |

7. Borrowers operate the Retained Collateral irrespective of the corporate identities and both have possession or control of each unit of the Retained Collateral.

8. The Agreements entitle Plaintiff to repossess and remove the Retained Collateral in the event of a default by Borrowers.

9. Plaintiff has notified Borrowers of the defaults under the Agreements and demanded possession of the Retained Collateral.

10. In the event of default, the Agreements require Borrowers to "assemble the Equipment and deliver it to Lender at a place to be designated by Lender."

11. The Complaint alleged the following claims for relief against the Defendants: money damages against Defendants for the amounts due and owing under the respective

Agreements and Guaranties, an order of possession for all units of the Retained Collateral, specific performance against Borrowers requiring them to surrender possession of the Retained Collateral, and injunctive relief necessary to enforce an order of possession and specific performance.

12. Defendants failed to timely answer the Complaint and the Clerk entered default against Defendants on March 1, 2021.

13. The default concedes the truth of the allegations of the Complaint as to Defendants' liability as to all counts brought against them.  Fed. R. Civ. P. 8(b)(6); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).  A formal evidentiary hearing is not required to determine the amount of damages for purposes of default judgment "if damages can be ascertained from the documentary evidence or in detailed affidavits." *See Dundee Cement*, 722 F.2d at 1323.

14. Plaintiff's monetary damages constitute a sum certain that may be calculated by reference to the applicable contracts and Plaintiff's supporting declarations and other documentation.

15. In addition, Plaintiff is entitled to recover its Collateral and to an order of possession and to specific performance of Borrowers' obligations under the Agreements.

16. Pursuant to the terms of the Agreements and the Uniform Commercial Code, the secured creditor's right to enforce the debt by proceeding for judgment and to exercise rights with respect to the collateral are cumulative and may be exercised simultaneously.  *See* Tex. Bus. & Com. Code § 9.601(a)–(c); 810 Ill. Comp. Stat. Ann. 5/9-601(c); *accord* IC 26-1-9.1-601.

17. In addition, due to the highly mobile nature of the Retained Collateral, an order of possession, without the accompanying injunctive relief, is not an adequate remedy at law, and in this case it appears more likely than not that Borrowers will be unable to respond to money damages. Therefore, Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Borrowers and other persons and firms having knowledge of this injunction, including specifically Mirjana Kuzmanova and Vladimir Kuzmanovski, are: (a) enjoined from continuing to use the Retained Collateral; (b) ordered to advise Plaintiff of the precise location of each and every item of the Retained Collateral; and (c) ordered to surrender the Retained Collateral to Plaintiff.

18. Plaintiff has satisfied the grounds necessary for injunctive relief as well as the grounds necessary for possession of the Retained Collateral under IC 32-35-2-1, *et seq*.

## Discussion

Based on these findings of fact and conclusions of law, a default judgment is properly entered in this case. Some aspects of the bank's proposed default judgment warrant discussion, however, and this is my explanation of the extent to which I have rejected or altered them.

The bank proposed a judgment in which money damages of $712,488.46 would be awarded against Trans Liner, Kuzmanova and Kuzmanovski jointly and severally, and damages in the amount of $623,008.68 would be awarded against Trans Lease. [DE 16 at 5.] But the $712,488.46 figure includes the $623,008.68 [DE 15 at 7-8], such that as drafted by the bank, the proposed default judgment would permit a double recovery of the smaller amount from Kuzmanova, Kuzmanovski and Trans Liner, and again separately from Trans Lease. To avoid that unintended result, I have composed the default judgment to award $623,008.68 jointly and

severally against all four defendants, and to award $89,479.78 jointly and severally against only Trans Liner, Kuzmanova and Kuzmanovski.

     Next, I believe that the bank's proposed default judgment does not reflect the appropriate role of the United States Marshal in enforcing the judgment, nor the necessary means of obtaining the assistance of the Marshal.  BMO Harris Bank has proposed Order of Possession language requiring Trans Liner and Trans Lease to promptly identify to the bank the whereabouts of all Retained Collateral, and thereafter to promptly surrender it to the bank.  [DE 16 at 5-6.]  I have retained this language in the default judgment to be entered.  But in addition to this self-actuating injunctive language, the bank's proposed default judgment attempts to authorize the United States Marshal, presumably (but not explicitly) in the event of defendants' non-compliance with self-surrender, to "seize the Retained Collateral by any and all legal means" at the bank's request.  [*Id*. at 6-7.]

     The judgment sets forth the relief being awarded to the bank by default.  The relief includes both money damages and the Order of Possession.  But I am not persuaded that means of executing the judgment is properly addressed within the document in the manner the bank proposes.  Instead, the process to enforce the Order of Possession would involve the bank seeking a Writ of Attachment in Aid of Execution to be issued by the Clerk.  If Retained Collateral is determined to be in the hands of a third-party, the bank might need a Writ of Garnishment instead.  I will not enter a judgment that vests the judgment-creditor with authority to invoke the assistance of the Marshal without these interim procedural steps, which would require the bank to specify what Retained Collateral remains to be repossessed and where it can be found.  The Marshal would in no event function as the bank's investigators attempting to locate Retained Collateral.  And rather than order that the Marshal can break and enter or change

locks on enclosures where Retained Collateral may be found – measures for which the bank cites no authority – I would be inclined to leave the conduct of the Marshal's Service to be governed by its own applicable authorities.  Similarly, whether or not a bond is required, and what fees the Marshal would be entitled to for efforts to execute a Writ of Attachment or Writ of Garnishment are matters governed by other authorities and on which I would not now presume to rule.

In these several respects, I have altered the proposed default judgment submitted by BMO Harris Bank.  Otherwise, I grant the bank's motion and have separately issued a default judgment awarding the damages sought and the requested injunctive relief requiring defendants to promptly turn over the Retained Collateral after being served with this opinion and the default judgment.

ACCORDINGLY:

Plaintiff BMO Harris Bank's Motion for Default Judgment [DE 15] is GRANTED, and a Default Judgment is separately entered herewith.  Plaintiff shall promptly serve a copy of this Opinion and Order on Defendants.

SO ORDERED this 29th day of April, 2021.

             /s/ Philip P. Simon
             UNITED STATES DISTRICT JUDGE